<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **MARIANA RAMON,** *Individually and as Administratrix for the ESTATE OF HECTOR CORTES MEJIA*,<br><br>Plaintiff,<br><br>v.<br><br>**OFFICER D. STONE,** *et al.*,<br><br>Defendants. | Civil Action No. 18-16402 (ZNQ) (TJB)<br><br>**OPINION** |

<u>**QURAISHI, District Judge**</u>

    **THIS MATTER** comes before the Court upon a Motion for Summary Judgment ("the Motion") filed by Defendants City of Long Branch ("Defendant City"), Officer D. Stone ("Officer Stone"), Officer S. Eskridge ("Officer Eskridge"), Officer A. Gonzalez ("Officer Gonzalez"), Officer J. Beirne ("Officer Beirne"), Officer V. Roselli ("Officer Roselli"), and Officer G. Samol ("Officer Samol") (collectively, "Defendants") pursuant to Rule 56 of the Federal Rules of Civil Procedure (ECF No. 88). Defendants filed a Brief in Support of their Motion. ("Moving Br.", ECF No. 88-1.) Included within their brief in support of the Motion is a Statement of Material Facts. ("Def's SMF", ECF No. 88-1 at 2–9.) Plaintiff Mariana Ramon, Individually and as Administratrix for the Estate of Hector Cortes Mejia ("Plaintiff" or "Ramon") filed two briefs[1] in

---

[1] Plaintiff's first opposition brief indicates that they conceded to dismissal of the First Amendment retaliatory arrest claims and the *Monell* claims. (ECF No. 96.) Two days after filing their first opposition brief, Plaintiff filed a second opposition brief whereby she retracted her stipulation of dismissal as to the false arrest, malicious prosecution, false imprisonment, and First Amendment retaliation charges. (ECF No. 97.)

1

opposition to the Motion ("Opp'n Br. 1", ECF No. 96; "Opp'n Br. 2", ECF No. 97) along with a Counterstatement of Material and Disputed Facts (ECF No. 96-1).  Defendants replied.  ("Reply Br.", ECF No. 100).

The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1.  For the reasons set forth below, the Court will GRANT Defendants' Motion for Summary Judgment.

I.      **BACKGROUND AND PROCEDURAL HISTORY**

    A.      UNDISPUTED MATERIAL FACTS

The Court finds the following facts undisputed:

Plaintiff Mariana Ramon married Hector Cortes Mejia ("Mejia") in 2001.  (Def's SMF ¶ 8).  Ramon sues individually and as administratrix for Mejia's estate.  (*Id*.)  In November of 2016, Ramon and Mejia were separated and living in different apartments in Long Branch, New Jersey.  (*Id*. ¶ 24.)  On November 24, 2016, Mejia called Ramon and told her that he was at the Metro PCS store in Long Branch and wanted a refund for his phone that was allegedly damaged.  (*Id*. ¶ 25.)  Ramon met Mejia near the Metro PCS store at approximately 10:30 a.m.  (*Id*. ¶ 26.)  Mejia had been drinking.  (*Id*.)  When Ramon met Mejia, she called the Long Branch Police Department.  (*Id*. ¶ 27.)  Ramon did not speak with anyone at Metro PCS before calling the police.  (*Id*.)

Officer Gonzalez was the first officer to respond and arrive at the Metro PCS store.  (*Id*. ¶ 28.)  Officer Gonzalez spoke in Spanish to Ramon and Mejia.  (*Id*.)  Ramon and Mejia were standing in front of the store.  (*Id*.)  Ramon and Mejia were upset and told Officer Gonzalez that Mejia wanted a refund for his phone.  (*Id*. ¶ 29.)  Officers Eskridge and Stone arrived at the store while Officer Gonzalez was speaking to Ramon and Mejia.  (*Id*. ¶ 30.)

Officer Gonzalez went into the store.  (*Id*. ¶ 31.)  The clerk advised Officer Gonzalez that she needed the phone's box before she could issue Mejia a refund.  (*Id*.)  When Officer Gonzalez

advised Ramon and Mejia that Metro PCS needed the box, Ramon and Mejia started to raise their voices. (*Id.*)

Ramon insisted that Officer Gonzalez write a report about Mejia's phone. (*Id.* ¶ 34.) Officer Gonzalez, however, explained that it was a civil matter between Mejia and the Metro PCS store. (*Id.*) Ramon held a pen in her hand while speaking with Officer Gonzalez. (*Id.* ¶ 35.) Officer Gonzalez thereafter grabbed Ramon's pen, threw it on the ground, and arrested Ramon. (*Id.* ¶ 36.)

Officer Stone observed Mejia attempting to interfere with Ramon's arrest. (*Id.* ¶ 39.) Officer Stone grabbed Mejia by the upper body and brought him to the ground. (*Id.* ¶ 40.) Mejia placed his hands towards his waistband underneath his body. (*Id.*) Officer Stone ordered Mejia to place his hands behind his back. (*Id.*) Officer Stone ordered Mejia several times to remove his hands and place his hands behind his back. (*Id.*) Officer Stone thereafter punched Mejia to try to get him to place his hands behind his back. (*Id.*) Upon doing so, Mejia placed his hands behind his back and Officer Stone effected the arrest.[2] (*Id.*) Officer Stone placed Mejia in Officer Beirne's patrol car and transported him to Long Branch Police Department. (*Id.* ¶¶ 41, 44.)

Thereafter, Officer Gonzalez placed handcuffs on Ramon. (*Id.* ¶ 42.) The Officers placed Ramon in Officer Stone's patrol car, and Officer Stone transported her to the station. (*Id.* ¶¶ 43, 45.)

On July 16, 2017, Mejia was murdered in an unrelated incident in Long Branch. (*Id.* ¶ 51.) On July 26, 2017, Ramon appeared in Long Branch municipal court to address the criminal charges against her. (July 26, 2017 Tr., ECF No. 88-9). Due to Mejia's death, the municipal prosecutor moved to dismiss the charges against him. (*Id.* at 2:14-16.) Ramon appeared again in Long Branch

---

[2] Plaintiff disputes what occurred during Mejia's arrest. The Court nonetheless finds these facts to be undisputed for reasons that will follow.

Municipal Court on December 12, 2017 and the charges against her were dropped. (Dec. 12, 2017 Tr. at 4:3-5, ECF No. 88-10).

### B. PROCEDURAL HISTORY

On November 23, 2018, Plaintiff filed a Complaint alleging the following: Violation of Civil Rights under 42 U.S.C. § 1983 for Retaliation for Protected First Amendment Conduct (Count One), Unlawful Arrest in violation of the Fourth Amendment (Count Two), Excessive Force in violation of the Fourth Amendment (Count Three), Malicious Prosecution in violation of the Fourth Amendment (Count Four), Failure to Intervene in violation of the Fourth and First Amendment (Count Five), Supervisor Individual Liability (Count Six), Municipal Liability – Unlawful Policy, Practice, Custom (Count Seven), and Municipal Liability – Failure to Train and Supervise (Count Eight); Violation of State Law – Intentional Infliction of Emotional Distress (Count Nine). (*See* Compl., ECF No. 1.)

On March 28, 2023, the Court ordered Defendants to furnish a copy of the video recording concerning the incident in question. (ECF No. 103.) Defendants thereafter provided to the Court a copy of the video recording. (ECF No. 104.)

### C. JURISDICTION

The Court has subject matter jurisdiction over Plaintiff's claims under 28 U.S.C. § 1331 because the civil action arises under the laws of the United States. The Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

## II. LEGAL STANDARD

### A. SUMMARY JUDGMENT STANDARD

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the

governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A material fact raises a "genuine" dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Williams v. Borough of W. Chester*, 891 F. 2d 458, 459 (3d Cir. 1989) (quoting *Anderson*, 477 U.S. at 248).

"In evaluating the evidence, the Court must consider all facts and their logical inferences in the light most favorable to the non-moving party." *Rhodes v. Marix Servicing, LLC*, 302 F. Supp. 3d 656, 661 (D.N.J. 2018) (citing *Curley v. Klem*, 298 F.3d 271, 276-77 (3d Cir. 2002)). "While the moving party bears the initial burden of proving an absence of a genuine dispute of material fact, meeting this obligation shifts the burden to the non-moving party to 'set forth specific facts showing that there is a genuine [dispute] for trial.'" *Id*. (quoting *Anderson*, 477 U.S. at 250).

"Unsupported allegations, subjective beliefs, or argument alone. . .cannot forestall summary judgment." *Read v. Profeta*, 397 F. Supp. 3d 597, 625 (D.N.J. 2019). "Thus, if the nonmoving party fails 'to make a showing sufficient to establish the existence of an element essential to that party's case,. . . there can be no genuine issue of material fact.'" *Id*. (quoting *Katz v. Aetna Cas. & Sur. Co.*, 972 F. 2d 53, 55 (3d Cir. 1992) (quotation marks omitted)). "In considering the motion, the Court 'does not resolve factual disputes or make credibility determinations.'" *Rhodes*, 302 F. Supp. 3d at 661 (quoting *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F. 3d 1125, 1127 (3d Cir. 1995)).

**B.     42 U.S.C. § 1983**

Plaintiff brings suit in Counts One through Eight under 42 U.S.C. § 1983. Section 1983 is not a source of substantive rights; rather, it merely provides a remedy for violations of constitutional rights. *See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 815 (1985). To establish a claim under 42 U.S.C. § 1983, Plaintiff must initially demonstrate that: (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct

5

deprived the complainant of rights secured under the Constitution or federal law. *See Sameric Corp. of Delaware, Inc. v. City of Philadelphia*, 142 F.3d 582, 590 (3d Cir. 1998).

### III. DISCUSSION

#### A. PLAINTIFF'S STIPULATION OF DISMISSAL OF THEIR *MONELL* CLAIMS (COUNTS SEVEN AND EIGHT)

As a first preliminary matter, Plaintiff indicates that she stipulates to the dismissal of her *Monell* claims. (Opp'n Br. 1 at PageID 598.) Plaintiff's Municipal Liability Claims in Counts Seven and Eight will therefore be dismissed with prejudice.

#### B. SUPERVISORY INDIVIDUAL LIABILITY (COUNT SIX)

As a second preliminary matter, Plaintiff asserts supervisory liability in Count Six against "Defendants Supervisor John Does" for alleged § 1983 violations on the basis that the unidentified individuals "at least implicitly approved, authorized or acquiesced in the unconstitutional conduct exhibited by their subordinate defendants." (Compl. ¶ 157.) Plaintiff pled the supervisors as John Doe defendants in their original Complaint. The docket indicates that the parties engaged in discovery from March of 2019 through June of 2021, more than two years. (*See* ECF Nos. 22, 50, 57, 62, and 69.) At no time did Plaintiff seek to amend her Complaint to identify the Supervisors.

Under Rule 21, the Court "may at any time, on just terms, add or drop a party." Fed. R. Civ. P. 21. This includes John Doe defendants. "Use of John Doe defendants is permissible in certain situations until reasonable discovery permits the true defendants to be identified." *Blakeslee v. Clinton Cnty*, 336 F. App'x 248, 250 (3d Cir. 2009) (citation omitted). "If reasonable discovery does not unveil the proper identities, however, the John Doe defendants must be dismissed." *Id.* (citation omitted). Given Plaintiff's lengthy opportunity to identify the supervisors and her failure to do so, the Court will exercise its discretion under Rule 21 to dismiss with

6

prejudice the Defendants Supervisor John Does as parties. Notably, this results in the dismissal of Count Six insofar as it is asserted solely against the supervisors.

### C. WHETHER THERE WAS PROBABLE CAUSE TO ARREST RAMON AND MEJIA (COUNTS ONE AND TWO)

Count One claims violations of the First Amendment, specifically, retaliation for protected First Amendment conduct against Officers Perez[3], Stone, and Roselli. (*See* Compl. ¶¶ 84–99.) Plaintiff alleges that Ramon "engaged in constitutionally protected conduct of writing down the names of police officers while they were carrying out their official duties." (*Id*. ¶ 85.) Plaintiff further alleges that Officers Perez and Stone "arrested [Ramon and Mejia] for engaging in constitutionally protected conduct to discuss their rights and write down the names of the officers involved in their encounter." (*Id*. ¶¶ 85-87.)

Count Two claims false arrest under the Fourth Amendment against Officers Perez and Stone, and Defendant City. (*See id*. ¶¶ 100–115.) Plaintiff alleges that the officers arrested Ramon and Mejia "without a warrant of any lawful basis." (*Id*. ¶ 104.)

The United States Court of Appeals for the Third Circuit has adopted a test to evaluate a claim of retaliation for engaging in activity protected under the First Amendment. *See Hill v. City of Scranton*, 411 F.3d 118, 125 (3d Cir. 2005). The plaintiff must establish: "(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." *Thomas v. Independence Twp*., 463 F.3d 285, 296 (3d Cir.

---

[3] Plaintiff names Officer Perez in Counts One through Three. The Deputy Municipal Clerk accepted service on Perez's behalf (ECF No. 11), but Defendants claim Daisy Perez has never worked at the Long Branch Police Department. (Moving Br. at 17.) To date, Defendant Daisy Perez has not appeared in this action. In deciding the instant Motion, the Court makes no findings as to Defendant Daisy Perez.

7

2006). When probable cause existed for the arrest, however, a retaliatory arrest claim must fail as a matter of law. *Nieves v. Bartlett*, 139 S. Ct. 1715, 1728 (2019).

Similarly, in analyzing false arrest claims, "a court to insulate a defendant from liability need find only that '[p]robable cause. . .exist[ed] as to any offense that could be charged under the circumstances.'" *Johnson v. Knorr*, 477 F.3d 75, 84–85 (2007) (quoting *Barna v. City of Perth Amboy*, 42 F.3d 809, 819 (3d Cir. 1994)) (amendments in original).

Defendants argue that probable cause existed to arrest Ramon because her criminal attorney stipulated to probable cause in municipal court. (Moving Br. at 17.) In opposition, Plaintiff argues that a genuine issue of fact exists as to whether probable cause was in fact stipulated because there is no specific testimony or acknowledgement on the record by counsel or by Ramon herself. (Opp'n Br. 2 at 4.)

Despite her arguments to the contrary, the record reflects that Ramon, through her attorney who represented her in the criminal action, stipulated to probable cause as to the criminal charges against her in municipal court. (Dec. 12, 2017 Tr. at 3:9-19, ECF No. 88-10.) Specifically, the prosecutor indicated that defense counsel was "going to independently stipulate to probable cause and the charges [were] going to be dismissed." (*Id*. at 3:9–10.) The municipal court judge thereafter asked defense counsel if "[that] was [her] understanding." (*Id*. at 3:17-18). Ramon's attorney then answered in the affirmative and indicated that she discussed it with Ramon. (*Id*. at 3:20-22.) Further, the municipal court judge accepted counsel's voluntarily stipulation of probable cause. (*Id*. at 4:1-2.)

Plaintiff provides no evidence that her stipulation of probable cause was involuntary or otherwise abusive. *See Precois v. Dilollo*, Civ. No. 13-6279, 2015 WL 8513561, at *4 (D.N.J. Dec. 20, 2015.) The transcript of the municipal court proceedings reflects that Ramon herself did

not indicate in any way that her stipulation of probable cause was involuntary or unknowing. Accordingly, the Court finds that no genuine issue of material fact exists as to whether there was probable cause to arrest Ramon.[4] Her claims for retaliatory and false arrest must therefore fail as a matter of law.

As for Mejia, Defendants argue that there was probable cause to arrest Mejia because he tried to interfere with Ramon's arrest. (Moving Br. at 17.) Defendants cite to both Officer Eskridge's deposition and the Videos from Officer Vehicles in support of this argument. (*Id*.) In opposition, Plaintiff argues that Officer Stone did not have probable cause merely because Mejia was getting loud and causing a scene. (Opp'n Br. 2 at 3.) Plaintiff contends that there is no video from the officers' vehicles of the officers' conduct on the scene and their body cameras did not capture the actual arrest. (*Id*.)

Here, because Mejia was deceased before he could stipulate to probable cause like Ramon, the Court must consider whether the evidence, viewed most favorably to Mejia, "reasonably would not support a factual finding of a lack of probable cause." *See Precois,* 2015 WL 8513561, at *4 (citing *Quinn v. Cintron*, 629 F. App'x. 397, 398–99 (3d Cir. 2015)). Conducting this analysis, the Court finds no genuine issue of material fact exists as to whether police had probable cause to arrest Mejia.

---

[4] In Plaintiff's second opposition brief, she argues that the stipulation of probable cause made in exchange for dismissals of the criminal charges are void because it violated Rules of Professional Conduct ("RPC") 3.4 (g) and New Jersey Ethics Opinion 714. (Opp'n Br. 2 at 1.) Plaintiff is incorrect. N.J. Ethics Opinion 714, Conditioning Entry of a Plea or Entry into Pretrial Intervention on Defendant's Release from Civil Liability and Hold-Harmless Agreement, 2008 WL 4790546, indicates that a prosecutor is prohibited from "*conditioning* entry of a plea or entry into pretrial intervention in a criminal, quasi criminal, or motor vehicle matter on the defendant's release of civil liability and agreement to hold harmless any person or entity such as the police, the prosecutor, or a governmental entity." (emphasis added). The Court first notes that Ramon did not enter a plea, nor did she enter pretrial intervention. Further, nothing within the record suggests that the dismissal of Ramon's charges was *conditioned* upon her stipulation to probable cause. The Court therefore rejects Ramon's argument that her stipulation to probable cause was procured in violation of RPC 3.4(g).

Ramon testified that prior to her arrest, Mejia told the officers that they could not arrest her because they had a little girl at home. (Ramon April 14, 2021 Dep. at 48:1-2, ECF No. 88-5.) Officer Eskridge testified on deposition that while Officer Gonzalez attempted to arrest Ramon, Mejia started lunging toward Officer Gonzalez. (Eskridge Dep. 50:13-15, ECF No. 88-7). Officer Stone likewise testified that Mejia attempted to "get in the middle of the Ramon arrest." (Stone July 27 Dep. 29:18-21, ECF No. 88-8.) Officer Stone stated that Mejia was "clearly disorderly. . . . He was causing a disruption of the pea[ce]." (*Id*. at 29:25-30:1.) He arrested Mejia for disorderly conduct. (*Id*. 30:1-2.)

At her deposition, Ramon stated that Officer Stone started hitting Mejia until he fell to the ground. (Ramon April 14, 2021 Dep. at 48:3-5.) Ramon, however, concedes that she did not know what Mejia was doing with his hands prior to him being hit. (*Id*. at 54:14-16.) She "only saw [Mejia] when he was being hit[,]" and did not know what Mejia was doing prior to being hit. (*Id*. at 48:3-5, 54:8.)

Given that Ramon did not know what Mejia was doing prior to him being hit and arrested, the Court finds that Defendants' evidence is undisputed that Mejia caused a disruption of the peace and attempted to interfere with Ramon's arrest. (*See id*.) Accordingly, the Court finds that no genuine issue of material fact exists as to whether law enforcement had probable cause to arrest Mejia. Mejia's retaliatory and false arrest claims, therefore, must also be dismissed as a matter of law. *See Nieves*, 139 S. Ct. at 1728. Judgment will therefore be entered for Defendants on Counts One and Two.

### D. COUNT THREE – 1983 CLAIMS OF EXCESSIVE FORCE AGAINST DEFENDANTS STONE AND PEREZ

Count Three alleges that Ramon and Mejia suffered injuries as a "direct result of the excessive and unnecessary force used by Defendant Perez and Defendant Stone." (Compl. ¶ 117.)

"The use of excessive force is itself an unlawful 'seizure' under the Fourth Amendment." *Couden v. Duffy*, 446 F. 3d 483, 496 (3d Cir. 2006). The Supreme Court has held that all claims alleging excessive force in the context of an arrest, investigatory stop, or seizure must be "analyzed under the Fourth Amendment and its 'reasonableness' standard." U.S. Const. Amend. IV; *Graham v. Connor*, 490 U.S. 386, 395 (1989); *Rivas v. City of Passaic*, 365 F.3d 181, 1 98 (3d Cir. 2004). "To prevail on a Fourth Amendment excessive-force claim, a plaintiff must show that a seizure occurred and that it was unreasonable under the circumstances." *Lamont v. New Jersey*, 637 F.3d 177, 182–83 (3d Cir. 2011) (citations omitted).

Here, the pivotal question for the Court is whether, in light of the circumstances, law enforcement employed an unreasonable amount of force to effectuate Ramon's and Mejia's arrests. *Santini*, 795 F. 3d at 417; *Graham*, 490 U.S. at 399.

To determine reasonableness in excessive force cases, courts within the Third Circuit ask, "whether under the totality of the circumstances, 'the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them.'" *Kopec v. Tate*, 361 F.3d 772, 776 (3d Cir. 2004) (quoting *Graham*, 490 U.S. at 397); *see also Santini*, 795 F.3d at 417 ("[W]e employ a 'totality of the circumstances' approach for evaluating objective reasonableness." (citing *Curley*, 499 F.3d at 207)). This assessment requires courts to balance the "nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396 (internal quotation marks and citation omitted). While the objective reasonableness inquiry "requires careful attention to the facts and circumstances of each particular case," the Supreme Court has provided three general factors to guide the Court's inquiry: (1) "the severity of the crime at issue"; (2) "whether the suspect poses an immediate threat to the safety of the officers or others"; and (3) whether the suspect "is actively

11

resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396 (citing *Garner*, 471 U.S. at 8–9); *Santini*, 795 F.3d at 417.

The objective reasonableness of a particular use of force is evaluated from "the perspective of the officer at the time of the incident and not with the benefit of hindsight." *Santini*, 795 F.3d at 417 (citation omitted). Thus, within the context of an excessive force claim, the "standard of reasonableness at the moment applies: 'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' violates the Fourth Amendment." *Graham*, 490 U.S. at 396 (quoting *Johnson v. Glick*, 481 F. 2d 1028, 1033 (2d Cir. 1973)). Rather, the "calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396–97. Accordingly, to determine whether the detective's use of force was unreasonable, this Court must "slosh [its] way through the factbound morass of 'reasonableness.'" *Scott*, 550 U.S. at 383.

> 1. *Ramon's Allegations of Excessive Force*

First, as to Ramon, she alleges that "Defendant Perez pulled [her] hair and intentionally slammed her head on the door, while, while effectuating her arrest[.]" (Compl. ¶ 119.) Defendants argue that the video recordings clearly demonstrate that no officer ever slammed Ramon's head against any vehicle door, nor did any officer punch or kick her while she was seated in the vehicle. (Moving Br. at 30.) In opposition, Plaintiff asserts that conflicting testimony exists regarding the circumstances of the arrest. (Opp'n Br. 1 at PageID 599–600.) Plaintiff argues that Officer Beirne's dash camera video shows Officers Eskridge, Stone and Gonzalez "shoving Ramon into the back of Officer Stone's vehicle." (*Id*. at PageID 603.)

In reply, Defendants argue that the force used by law enforcement was reasonable. (Reply Br. at 12.) Defendants assert that Ramon's allegations are pure fiction. (*Id*.) Defendants reiterate that the video clearly demonstrates that "no officer ever slammed Ramon's head against any vehicle door, [n]or did any officer punch or kick her while she was seated inside the vehicle." (Id. at 13.) Further, Defendants maintain that Ramon consistently resisted arrest and refused to stand up after being handcuffed. (*Id*.) Defendants contend that "[p]ushing a recalcitrant suspect into a vehicle does not constitute excessive force." (*Id*. at 14.)

Generally, summary judgment is inappropriate on an excessive force claim when parties offer conflicting testimony regarding the material events surrounding the alleged force. Suarez v. City of Bayonne, 566 F. App'x, 181 (3d Cir. 2014). The United States Supreme Court has reasoned that the existence of a videotape recording, however, presents an "added wrinkle" to the general standard requiring the court to construe facts in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). "Where there is a video recording of the relevant events, the Court views the facts as depicted in the recording, rather than in the non-movant's favor whenever the recording 'blatantly contradict[s]' the non-movant's version such that 'no reasonable jury could believe it.'" *Knight v. Walton*, 660 F. App'x. 110, 112 (3d Cir. 2016) (alteration in original) (quoting *Scott*, 550 U.S. at 380–81).

Here, the Court has thoroughly reviewed the video recordings provided by Defendants. (*See* ECF No. 104.) The video recording depicts Ramon, handcuffed, sitting on the curb facing the rear passenger seat door of Officer Stone's police vehicle. (*See* McCarthy Cert. at Exhibit G.) Thereafter, law enforcement attempted to place Ramon into the back of Officer Stone's vehicle. (*Id*.) Ramon, however, resists the Officer's attempts. (*Id*.) Law enforcement is therefore required to push her into the vehicle. (*Id*.) At no point does any officer slam Ramon's head on the door or

13

pull Ramon's hair. (*Id*.) Further, once inside the police vehicle, no one touches Ramon. (*Id*.) The Court finds that here, due to Ramon's resistance to the Officer's commands and reluctance to enter the police vehicle, pushing her into the vehicle was, objectively, a reasonable use of force. Accordingly, as to Ramon, Plaintiff has failed to raise a genuine issue of material fact as to whether officers imposed excessive force in effectuating her arrest. Judgment will therefore be entered for Defendants as to Ramon's excessive force claim in Count III.

2. *Mejia's Allegations of Excessive Force*

As to Mejia, Plaintiff alleges that "Defendant Stone punched [Mejia] in the face and threw him down to the ground while effectuating [his arrest]." (Compl. ¶ 118.) Defendants admit that Officer Stone punched Mejia in the face. (Moving Br. at 20–21; Stone Dep. 30:12-24, ECF No. 88-8.) Defendants argue, however, that Officer Stone's use of force under the circumstances does not constitute excessive force. (Moving Br. at 21.) In opposition, Plaintiff argues that Officer Stone admitted that, while Mejia was on the ground, he "punched him in the face even though he had a clear vision of his left hand in the air above his head and his right arm smashed against his stomach." (Opp'n Br. 1 at PageID 602.) Defendants, in reply, reiterate that Officer Stone's use of force did not constitute excessive force. (Reply Br. at 16.) Defendants argue that courts have repeatedly determined that punching a suspect who is resisting arrest is a reasonable use of force. (*Id*. at 17.)

Officer Stone testified that he "grabbed [Mejia] by the upper body and brought him to the ground. He was belly down on the ground and immediately placed his hands towards his waistband like underneath his body." (Stone Dep. 30:11-15.) Officer Stone additionally testified that he "ordered him several times to remove his hands and to place his hands behind his back" to secure handcuffs and effectuate the arrest. "He refused. . .[Officer Stone] ultimately thought [he]

14

should punch him to try to get him to place his hands behind his back." (*Id*. at 30:15-22.) Ultimately, Officer Stone punched Mejia and upon doing so, Mejia placed his hands behind his back. (*Id*. at 30:22-23.) As set forth above, Ramon testified that she did not know what Mejia was doing with his hands prior to him being hit. (Ramon April 14, 2021 Dep. at 54:14-16.)

"Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham*, 490 U.S. at 396 (citing *Terry v. Ohio*, 392 U.S. 1, 22–27 (1968)). Here, Defendants present undisputed evidence that Officer Stone punched Mejia because Mejia refused to remove his hands from near his waistband to effectuate an arrest. The Court therefore finds that Officer Stone's use of force was reasonable under the circumstances because Officer Stone could not observe Mejia's hands, unaware of whether Mejia was armed, and the use of force took place in the context of effecting an arrest. *See Sharrar v. Felsing*, 128 F.3d 810, 822 (3d Cir. 1997). As a result, Officer Stone's use of force did not constitute excessive force in violation of the Fourth Amendment. The Court therefore finds no genuine issue of material fact as to whether Officer Stone employed a reasonable amount of force to effectuate Mejia's arrest. Judgment will therefore be entered as to Mejia's excessive force claims in favor of Defendants.[5]

### E.     MALICIOUS PROSECUTION (COUNT FOUR)

In Count Four, Plaintiff alleges that all "Defendants acted intentionally, with actual malice and ill will, and without legal justification, knowingly, willfully, and wantonly evidencing a complete and utter disregard for the truth in instituting legal proceedings against [Ramon and Mejia.]" (Compl. ¶ 141.) Defendants argue that Plaintiff's allegations are "beyond frivolous."

---

[5] Because the Court finds no genuine issue of material fact as to whether law enforcement employed excessive force in effectuating Plaintiff's arrests, it will not discuss whether individual officers were entitled to qualified immunity on these claims.

15

(Moving Br. at 27.) Defendants contend that there can be no malicious prosecution when the prosecutor agrees to dismiss the charges at the urging of the police officers. (*Id*.) Defendants point out that the Long Branch prosecutor is not even named as a Defendant. (*Id*.) In opposition, Plaintiff argues that given issues of fact exist in relation to the existence of probable cause for Ramon's and Mejia's arrest, the malicious prosecution claims must also be submitted to a jury for determination. (Opp'n Br. 2 at 5.)

To state a claim for malicious prosecution under 42 U.S.C. § 1983, a plaintiff must establish that:

> (1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in Plaintiff's favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

*Johnson,* 477 F.3d at 81–82 (citation omitted).

As already discussed herein, the Court found no genuine issue of material fact as to whether Defendant Officers had probable cause to arrest Ramon and Mejia. Moreover, the charges were dismissed in municipal court. Accordingly, Plaintiff's malicious prosecution claim must fail as a matter of law. Judgment will therefore be entered in favor of Defendants as to Plaintiff's malicious prosecution claim in Count Four.

  **F. FAILURE TO INTERVENE (COUNT FIVE)**

Plaintiff alleges that Defendants Eskridge, Roselli, Gonzalez, Bierne, and Samol had a duty to intervene "when Defendant Stone and Defendant Perez were engaging in the infliction excessive force upon [Ramon and Mejia]." (Compl. ¶ 145.)

A police officer "has a duty to take reasonable steps to protect a victim from another officer's use of excessive force, even if the excessive force is employed by a superior." *Smith v.*

*Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002).  For an officer "[t]o be liable under a failure to intervene theory, the plaintiff must have demonstrated that [his or her] underlying constitutional rights were violated, that the officer had a duty to intervene, and that the officer must have had a realistic and reasonable opportunity to intervene." *White v. City of Vineland*, Civ. No. 16-8308, 2020 WL 6638579, at *6 (D.N.J. Nov. 12, 2020) (citing *Smith*, 293 F.3d at 650–51). "Thus, where a plaintiff is unable to establish a claim for excessive force, he cannot establish a claim for failure to intervene." *Coleman v. City of Long Branch*, Civ. No. 15-7314, 2018 WL 4027033, at *8 (D.N.J. Aug. 22, 2018) (citation omitted).

Here, Plaintiff failed to satisfy this burden because she failed to raise a genuine issue of material fact as to whether Ramon and Mejia were subjected to excessive force.  Accordingly, the Court finds no genuine issue of material fact as to whether the named officers failed to intervene.  Judgment will therefore be entered in favor for Defendants as to Plaintiff's failure to intervene claim in Count Five.

## G. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (COUNT NINE)

In Count Nine, Plaintiff alleges that Officer Roselli intentionally caused severe emotional distress to Ramon by his "extreme, intentional, outrageous, willful and wanton conduct when he threatened to call child protective services[.]" (Compl. ¶ 179.)  Defendants argue that Count Nine must be dismissed because Plaintiff never served a tort claim notice pursuant to N.J.S.A. 59:8-8.  (Moving Br. at 32.)  Defendants additionally argue that Officer Roselli was not present when the Ramon and Mejia were arrested.  (*Id.*)  Defendants contend that Officer Roselli does not appear in any of the videos from the officers' vehicles, nor is he heard on any of the microphones.  (*Id.*)  Plaintiff does not respond to this argument, nor do they present any evidence.

Defendants contend that Officer Stone answered the call to the MetroPCS store even though it was in Officer Roselli's zone. (Moving Br. at 32.) This is consistent with Officer Stone's deposition testimony that he was answering Officer Roselli's calls on his zone of service that day. (Stone Dep. 42:22-43:7.) Plaintiff has presented no other evidence to dispute this fact. Accordingly, no genuine issue of fact exists as to whether Officer Roselli intentionally inflicted emotional distress. Judgment will therefore be entered in favor of Defendants as to Count Nine.

### IV.     CONCLUSION

For the reasons stated above, the Court will GRANT the Motion for Summary Judgment filed by Defendant Officers Stone, Eskridge, Gonzalez, Beirne, Roselli, and Samol, and Defendant City of Long Branch. Counts Seven and Eight against the City of Long Branch will be DISMISSED WITH PREJUDICE. Count Six will also be DISMISSED WITH PREJUDICE. Judgment will be entered in favor of Defendants Officers Stone, Eskridge, Gonzalez, Beirne, Roselli, and Samol, and Defendant City of Long Branch as to the remaining claims.[6] An appropriate order will follow.

Date: **April 26, 2023**

                                      s/ Zahid N. Quraishi
                                      **ZAHID N. QURAISHI**
                                      **UNITED STATES DISTRICT JUDGE**

---

[6] Following this decision, Defendant Officer Daisy Perez will be the sole remaining defendant.